# 12-338-cv

## United States Court of Appeals
### for the
### Second Circuit

PREDRAG CICVARA,

*Plaintiff-Appellant,*

– v. –

PROCTOR & GAMBLE CO., DURACELL, LYNNE BURNETT,

*Defendants,*

– and –

GILLETTE CO., PROCTOR & GAMBLE CO., INC.,

*Defendants-Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

**BRIEF FOR PLAINTIFF-APPELLANT**

LAW OFFICE OF IGOR I. SIKORSKY, JR.
*Attorneys for Plaintiff-Appellant*
P.O. Box 38, 121 Perry Street
Unionville, Connecticut 06085
(860) 675-5313

# **TABLE OF CONTENTS**

                              **Page**

FACTUAL BACKGROUND ....................................................................... 1

ARGUMENT

POINT I

   I.   WHETHER THE DEFENDANT HAD A RIGHT TO TERMINATE CICVARA'S EMPLOYMENT IS NOT THE ISSUE ............................................................................................... 2

   II.  WHETHER THE DEFENDANT IS HELD TO <u>DE NOVO</u> REVIEW OR IS ALLOWED "DIFFERENTIAL" STATUS IS NOT THE QUESTION. UNDER EITHER STANDARD OF REVIEW GILLETTE FAILED TO HONOR ITS OBLIGATION ...................................................................................... 2

   III. GILLETTE FAILS TO OFFER ANY EVIDENCE THAT IT ACTED IN ACCORD WITH THE PLAINLY STATED REQUIREMENTS OF THE PLAN ...................................................... 3

   IV. CONTRAST CICVARA'S CLAIM FOR SUMMARY JUDGMENT, IS CLEAR, SUPPORTED ENTIRELY WITH UNCONTESTED AND UNCONTOVERTIBLE FACTS ............... 4

   V.  CICVARA CONTENDS THE PLAN'S LANGUAGE IS CLEAR AND UNAMBIGUOUS. HOWEVER, IF THERE BE ANY DOUBT ABOUT THE IMPROPER INTENT OF THE PLAN THEN THE DOUBT SHOULD BE RESOLVED AGAINST THE PLAN'S SCRIBNER'S ................................................................... 4

   VI. PLAINLY SPOKEN, GILLETTE MIGHT HAVE A RIGHT TO TERMINATE CICVARA, BUT, IF THIS WAS IT'S ONLY MOTIVE, IT IS GOVERNED BY ITS OWN PLAIN LANGUAGE TO HONOR THE STOCK OPTIONS . ..................... 6

   VII. GILLETTE CITED SECTION 6(f)A, AS JUSTIFICATION FOR DENYING THE STOCK OPTIONS BUT FAILED TO FOLLOW THE PROCEDURES THEREIN ..................................................... 7

VIII. WHILE CICVARA'S CONDUCT MIGHT BE DEEMED "INAPPROPRIATE" IT CANNOT BE SO DEEMED AS A MATTER OF LAW ............................................................................... 8

CONCLUSION ........................................................................................ 9

RELIEF REQUESTED ............................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

Bowersox v. P.H. Glatfelter Co., 677 F. Supp. 307 (M.D. Pa. 1988) ......... 7

Firestone v. Burch 489 U.S. 101 ................................................................ 2

Miller v. Equitable Life Insurance Society, 181 Ill. App. 3d 954, 957, 537 N.E. 2d 887,889 (1 Dist. 1989) ................................................................ 6

Semmes Motors v. Ford 429, F.2d 1197 (2 Cir. 1970) ............................... 5

Sharkley V. Ultramar Energy 2nd Circuit 1995 ......................................... 3

**Other Authority:**

Restatement of Contracts. Section 206 ....................................................... 5

**FACTUAL BACKGROUND**

Despite the avalanche of paper which has inundated the judicial system in this case, the actual issue is relatively simple. Did the defendant follow its own rules in divesting Cicvara of his stock options?

Predrag Cicvara was an eight-year employee of Duracell (a manufacturer of batteries and a wholly owned subsidiary of Gillette). At issue was approximately 11,000 stock options accumulated by Cicvara while an employee.

While on a business trip, Cicvara encountered a young woman who was an employee of a buyer of Duracell products. He made what in an earlier generation might be deemed a "pass." Specifically, he subsequently admitted that while they were both staying at a hotel on a business trip, he visited her room after dinner to share desert. It is clear he visited the room, though there is a dispute as to whether he was invited or invited himself. In any event he was there - sat on her bed, massaged her feet while they talked. He did remove his pants, through remaining in shorts. Subsequently, he left her room without any incident and the next day profusely apologized for the awkward event.

Upon his return to corporate headquarters in the United States he was summoned into a conference in the Human Relations Division and summarily terminated on June 15, 2009. On June 16, 2009 he was informed that all his stock

1

options were divested. The reasons are set forth in the Appendix, listing the correspondence and quoting in full the pertinent language of Gillette's stock plans.

## ARGUMENT

I. WHETHER THE DEFENDANT HAD A RIGHT TO TERMINATE CICVARA'S EMPLOYMENT IS NOT THE ISSUE

The defendant deemed that Cicvara's conduct in and of itself, with no investigation of its "material and demonstrable" effect on Gillette, was both cause for termination and divestiture of his stock options. Cross motions for summary judgment were appealed to this court.

Thus the only issue before this court is <u>not</u> whether the defendant had a right to fire Cicvara (which is not conceded) but rather whether the defendant met the higher standard, which it promulgated for divestiture.

II. WHETHER THE DEFENDANT IS HELD TO <u>DE NOVO</u> REVIEW OR IS ALLOWED "DIFFERENTIAL" STATUS IS NOT THE QUESTION. UNDER EITHER STANDARD OF REVIEW GILLETTE FAILED TO HONOR ITS OBLIGATION.

The seminal case of <u>Firestone v. Burch</u> 489 U.S. 101, clearly sets forth the standard for review of ERISA benefit plans. For a variety of reasons Cicvara was entitled to a de novo review of the decision subject to this appeal. A factual determination, in distinction to an interpretation is subject to <u>de novo</u> review.

2

PEREZ V. AETNA

6TH CIRCUIT 1996 SEPT. 23, NO 95-1111

Beyond this the decision clearly was <u>not</u> made by the pension committee but by Human Relations. Thus under <u>Sharkley V. Ultramar Energy</u> 2nd Circuit 1995 when an authorized party makes a factually challenged determination the appeal is heard on a <u>de novo</u> basis.

Regardless of whether <u>de novo</u> or deferential is the standard, clearly a decision contrary to the express language of the plan is "arbitrary and capricious" on its face.

III.  GILLETTE FAILS TO OFFER ANY EVIDENCE THAT IT ACTED IN ACCORD WITH THE PLAINLY STATED REQUIREMENTS OF THE PLAN

As will be set forth, the plan is specific on the standard for voiding stock options. There is no evidence whatsoever that Gillette meets the standard of "substantial and demonstrable" damage to Gillette. Nor could there be because the factual chronology set forth by Gillette demonstrates conclusively that Gillette denied Cicvara stock options "automatically" upon termination.

3

IV.    IN CONTRAST CICVARA'S CLAIM FOR SUMMARY JUDGMENT IS CLEAR, SUPPORTED ENTIRELY WITH UNCONTESTED AND INCONTROVERTIBLE FACTS.

    Cicvara, in his cross motion, has demonstrated that he was denied stock options, "automatically" (a word used by Gillette) with no investigation concerning the requirement to allege demonstrable loss to Gillette.

V.    CICVARA CONTENDS THE PLAN'S LANGUAGE IS CLEAR AND UNAMBIGUOUS. HOWEVER, IF THERE BE ANY DOUBT ABOUT THE IMPROPER INTENT OF THE PLAN THEN THE DOUBT SHOULD BE RESOLVED AGAINST THE PLAN'S SCRIBNER'S.

    The law of contracts is so clear on this proposition that it would be an insult to the Court to load down this filing with citations. Simply stated, if there is ambiguity in contractual language it is to be construed against the entity responsible for the drafting.

    There can be no question that contract rules apply in this case, since Gillette has repeatedly referred to the issues as ones of "contract" law.

    It is a basic principle of law that the language of the plan should be interpreted, if there is any ambiguity against Gillette.

    In choosing among the reasonable meanings of a promise or agreement or a term thereof, that meaning is generally preferred which operates against the party

4

who supplies the words or from whom a writing otherwise proceeds. Even given a "differential" standard (which is not conceded) defendant fails to meet this standard.

Where one party chooses the terms of a contract, he is likely to provide more carefully for the protection of his own interests than for those of the other party. He is also more likely than the other party to have reason to know of uncertainties of meaning. Indeed, he may leave meaning deliberately obscure, intending to decide at a later date what meaning to assert. In cases of doubt, therefore, so long as other factors are not decisive, there is substantial reason for preferring the meaning of the other party. The rule is often invoked in cases of standardized contracts and in cases where the drafting party has the stronger bargaining position, but it is not limited to such cases. It is in strictness a rule of legal effect. Sometimes called construction, as well as interpretation; its operation depends on the positions of the parties as they appear in litigation, and sometimes the result is hard to distinguish from a denial of effect to an unconscionable clause.

<u>Restatement of contacts</u>. Section 206. To the effect discussing the general rule see <u>Semmes Motors v. Ford</u> 429, F.2d 1197 (2 Cir. 1970).

5

VI. PLAINLY SPOKEN GILLETTE <u>MIGHT</u> HAVE A RIGHT TO TERMINATE CICVARA, BUT, IF THIS WAS IT'S ONLY MOTIVE, IT IS GOVERNED BY ITS OWN PLAIN LANGUAGE TO HONOR THE STOCK OPTIONS.

Gillette has repeatedly stated that the issue presented by the instant litigation is not an asserted claim of wrongful discharge but that the only issue is a contractual claim concerning the stock option plan.

Gillette mistakes the basic issue, which is <u>not</u> whether Gillette could terminate Cicvara, nor its motives for doing so, but whether Gillette followed its own Plan. Plaintiff contends, and supports by Cicvara's affidavit, that there was no demonstrable harm to Gillette.

Gillette claims it had an "automatic" right to terminate Cicvara. This is clearly not the language of 6(f)A or B and that negates Gillette's position.

Many courts have distinguished between wrongful conduct and "gross" misconduct. For example, a harasser's behavior may be "inconsiderate, rude, vulgar, uncooperative, unprofessional and unfair "but not be outrageous."

<u>Miller v. Equitable Life Insurance Society</u>, 181 Ill. App. 3d 954, 957, 537 N.E. 2d 887,889 (1 " Dist. 1989)).

6

Another case found a harasser's conduct was "insulting, undignified, annoying and perhaps representative of the rough edges of society, but not extreme or outrageous." <u>Bowersox v. P.H. Glatfelter Co.</u>, 677 F. Supp. 307 (M.D. Pa. 1988).

These principles are precedents for the Court finding that Cicvara is entitled to his stock options while, as one treatise has stated, there are no hard and fast rules" therefore the issue of "gross" should be left to a jury. See <u>Sexual Harassment</u> by Alden and Moore section 8.

## VII. GILLETTE CITED SECTION 6(f)A, AS JUSTIFICATION FOR DENYING THE STOCK OPTIONS BUT FAILED TO FOLLOW THE PROCEDURES THEREIN.

Furthermore, Gillette's submission to this Court states Cicvara, was terminated pursuant to Section 6(f)A of the plan. See Peggy W's affidavit in the Appendix. This section (6(f)A), requires a demand for performance which was never made. Thus on the face of Gillette's own pleadings the voiding of Cicvara's stock options was improper.

On this and this alone Gillette should be denied summary judgment since its own documents create an issue of fact, i.e. whether Cicvara was terminated pursuant to 6(f)A or 6(f)B.

VIII. WHILE CICVARA'S CONDUCT MIGHT BE DEEMED "INAPPROPRIATE" IT CANNOT BE SO DEEMED AS A MATTER OF LAW.

Cicvara was charged with what the Court clearly could call "an unsolicited and uninvited" sexual overture, which even he admitted could be deemed "inappropriate." But Gillette asks this Court to hold as a matter of law that this conduct was "Gross," denying that this was a question of fact for the jury to decide, not the Court. A jury could find such conduct wrong, and a jury might sustain such conduct as justified termination. But the language of the plan requires a higher standard and the word "gross" created a factual determination by a jury. Gillette's motion would remove from a jury the option to determine the level of sanctions Cicvara has incurred.

Courts have quite routinely upheld sexual harassment as grounds for termination. Such conduct clearly is adequate basis for termination, but the plan calls for gross misconduct.

But whether Cicvara's termination was justified is not the issue presented in this case. The plan specifically and clearly sets forth a higher standard for denial of earned and accrued options.

Simply stated, if after a jury trial, with the same evidence presented to the court and a jury, would the court be justified in directing a verdict that as a matter

8

of law, Cicvara's conduct met the higher standard of "gross." That is what Gillette asks the court to do.

The severity of "punishment" for misconduct is left, by the plain language, for a determination by a jury.

The plaintiff will waive <u>in this action</u> only, any claims to "unjust enrichment," severance pay and/or the claim of a bonus. This waiver is limited to the issues raised in this litigation, for the stock options as based as defendants motion is on contract law.

This waiver is limited to the instant action and Cicvara reserves the all rights to challenge the rightfulness of his termination. That issue has been expressly barred from this court's consideration by previous rulings in this case.

## **CONCLUSION**

The plaintiff claims to have proven, by the facts alleged by Gillette and affirmed by the record before this court, that Gillette's motion for Summary Judgment should be denied. Furthermore, the lack of any possible rebuttal evidence mandates granting Cicvara's cross motion for Summary Judgment.

## **RELIEF REQUESTED**

Cicvara requests this Court to reverse the District Court's granting Summary Judgment to Gillette and remand the case back with directions to enter Summary Judgment for the appellant.

Dated: July 23, 2012

                                                        Respectively submitted

                                                        _____/S/_____
                                                        IGOR I. SIKORSKY, JR.
                                                        P.O. Box 38
                                                        Unionville, CT 06085
                                                        Federal Bar# 04233